# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**BOBBIE LEE VALDEZ,**

      **Plaintiff,**

vs.                                                                                CIV No. 22-576 KRS

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Bobbie Lee Valdez's ("Plaintiff") Opposed Motion to Reverse and Remand ("Motion") (Doc. 21), dated January 18, 2023, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85. The Commissioner responded to Plaintiff's Motion on May 17, 2023 (Doc. 27), and Plaintiff filed a Notice of Briefing Complete (Doc. 29). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ did not err in her decision and will **DENY** Plaintiff's Motion.

## I. PROCEDURAL POSTURE

On June 15, 2015, Plaintiff filed an initial application for supplemental security income. (*See* Administrative Record ("AR") at 17, 68, 183–90).[1] Plaintiff alleged she became disabled on November 17, 2008, due to a manic-depressive disorder, bipolar disorder, and mental impairments. (*Id.* at 69). ALJ Cole Gerstner granted Plaintiff a hearing after denials at both the initial and

---

[1] Document 15 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page. Notably, multiple documents in the AR state Plaintiff's filing date as May 6, 2015, or June 15, 2015. The Court utilizes June 15, 2015, as the respective date for purposes of this Memorandum, Opinion, and Order.

reconsideration levels of review. (*Id.* at 17). Plaintiff amended her alleged onset date to August 5, 2014, at the September 12, 2017, hearing. (*Id.*) ALJ Gerstner subsequently determined Plaintiff was not disabled. (*Id.* at 27–28). The ALJ's decision became final when, on July 24, 2018, the Appeals Council denied Plaintiff's request for review. (*Id.* at 437–41). *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Plaintiff, thereafter, appealed to the Court to reverse and remand ALJ's Gerstner's decision, which the Court granted. (*Id.* at 446–54).

On remand, ALJ Michelle Lindsay conducted a telephonic hearing on May 5, 2022. (*Id.* at 370, 394). Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Clifton A. King Jr. (the "VE"). (*Id.* at 370). Plaintiff maintained her alleged disability onset date of August 5, 2014. (*Id.*)

On June 2, 2022, ALJ Lindsay issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act (*Id.* at 367–91), which made the ALJ's decision the final decision of the Commissioner. (*Id.* at 367–417). On August 3, 2022, Plaintiff filed the Complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation

omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

## B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. (*See id.* at 24–25). If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). At step four, the claimant must prove

that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 367–91). First, ALJ Lindsay found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of August 5, 2014. (*Id.* at 372). The ALJ then found at step two that Plaintiff suffered from the severe impairments of "bipolar affective disorder, anxiety disorder, delusional disorder, and substance abuse disorder." (*Id.* at 373).

At step three, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*Id.* at 373–77). For opinion evidence, ALJ Lindsay reviewed records from: (1) Michael A. Lace, PsyD, an impartial medical expert; (2) Disability Determination Services ("DDS") state-agency psychological consultants; (3) Shari Spies, PsyD, a medical expert referred to by the New Mexico Social Security DDS; (4) Mark A. Acuri, PhD, a medical expert referred to by the New Mexico Department of Vocational Rehab ("DVR"); and (5) Christine Paschke, Plaintiff's mother. (*Id.* at 374–75).

The ALJ concluded that, during periods of substance use, the severity of Plaintiff's impairments met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 373). Moreover, during periods of sobriety, Plaintiff experienced some anxious or depressed moods, abnormal thought processes and isolating behaviors. (*Id.* at 375). The objective evidence, however, established that Plaintiff retained a level of functioning within the occupational limits. (*Id.*). Thus, if Plaintiff was sober, she would not have an impairment or combination thereof to satisfy Appendix 1. (*Id.*).

At step four, the ALJ concluded that for the relevant period and if Plaintiff stopped the substance use, Plaintiff possessed an RFC to perform a full range of work, but with the following non-exertional limitations:

- [Plaintiff] is limited to understanding, remembering, and carrying out only simple instructions;
- [Plaintiff] is able to maintain attention and concentration to perform and persist at only simple tasks at a consistent pace for two hours at a time without requiring redirection to task;
- [Plaintiff] requires work that does not involve interaction with the general public. She can have only occasional interaction with coworkers and supervisors; [and]
- [Plaintiff] requires work involving no more than occasional change in the routine work setting and no more than occasional independent goal setting or planning.

(*Id.* at 377). Based on this RFC, the ALJ found Plaintiff could perform past relevant work, however, Plaintiff did not have any past relevant work. (*Id.* at 381).

Moving to step five, the ALJ determined that if Plaintiff remained sober then she could perform other jobs existing in significant numbers in the national economy. (*Id.*). The ALJ concluded that Plaintiff's substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance use. (*Id.*). Therefore, Plaintiff was not disabled at any time from August 5, 2014, through June 2, 2022. (*Id.* at 381–82).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to properly consider all evidence in weighing a medical opinion (*see* Doc. 21 at 20–24), to meaningfully consider evidence in determining whether Plaintiff's substance use was material to her disability (*see id.* at 22–23), or to adequately develop the record as to Plaintiff's alopecia (*see id.* at 23). The Court disagrees with Plaintiff as to each claim.

### A.  Weight Given to a Non-Treating Medical Source

Plaintiff first asserts that ALJ Lindsay failed to evaluate all evidence when she afforded

"little weight" to Shari Spies, PsyD's ("Dr. Spies") opinion that Plaintiff suffers "marked limitation in her abilities to attend and concentrate." (Doc. 21 at 20–24). Specifically, the ALJ did not: (1) consider Plaintiff's history of mental status exams ("MSE") during periods of sobriety; (2) explain how Plaintiff's personal activities were inconsistent with Dr. Spies' opinions of marked limitations; and (3) consider the limitations of Dr. Mark A. Acuri, PhD's ("Dr. Acuri") opinions and contradictory evidence thereto.[2] (*Id.*).

"The regulations require the ALJ to consider all evidence in the case record when he makes a determination or decision whether claimant is disabled." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (citing 20 C.F.R. § 404.1520(a)(3)) (internal quotation marks and alterations omitted). An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). However, while "[t]he record must demonstrate that the ALJ considered all of the evidence," she "is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (emphasis added). "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." (*Id.*).

To meet her burden in this Court, Plaintiff must not only "point[] to evidence that she claims the ALJ failed to discuss," but also "say why it was significantly probative." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014). The Court will not do so for her. (*Id.*).

### i.   *Plaintiff's MSEs*

Plaintiff contends that in evaluating Dr. Spies opinion, ALJ Lindsay did not consider Plaintiff's MSEs that purportedly demonstrated "cognition abnormal for circumstantial thinking . . . hopeless/helpless thoughts . . . hallucinations, skin picking, mumbling, anger, agitation, limited

---

[2] Plaintiff does not object to ALJ Lindsay's assessments wherein she afforded "great weight" to Dr. Spies' opinions. Nor does Plaintiff raise issue as to the ALJ's conclusion that Dr. Acuri's opinion was entitled to "great weight" or the ALJ's reasons thereto. The Court will thus confine its analysis to issues Plaintiff has properly preserved. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *see also Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

insight/judgment, disheveled appearance, and homelessness" during periods of sobriety. (Doc. 21 at 20–21). In turn, the Commissioner argues the ALJ explicitly recognized and thoroughly articulated why the medical record did not support a finding of marked limitation. (Doc. 27 at 12–16). The Court agrees with the Commissioner.

At step three, ALJ Lindsay reviewed the medical records and medical opinions in the record. In reviewing Plaintiff's November 2015, psychological consultative examination with Dr. Spies, the ALJ noted Dr. Spies concluded Plaintiff was: "mildly limited in her abilities to understand and remember very short and simple instructions;" "moderately limited in her abilities to understand and remember detailed or complex instructions; carry out instructions; work without supervision; adapt and change; and to be aware of normal hazards and react properly;" and "markedly limited in her abilities to attend and concentrate as well as interact with the public, coworkers, or supervisors." (AR at 374 (citing AR at 312–13). The ALJ further determined that Dr. Spies evaluated Plaintiff during a period of sobriety (August 2015 - November 2015), but did not account for Plaintiff's substance use when providing an opinion as to functional limitations. (*Id.* at 374, 380 (citing AR at 312–13).

ALJ Lindsay then concluded that Plaintiff, during times of sobriety and substance use, presented with mood instability and delusions. (*Id.* at 380). However, Plaintiff's limitations in attending and concentrating were not as extreme as Dr. Spies opined because Plaintiff generally presented with intact cognition. (*Id.*). Thus, Dr. Spies' opinion as to the marked limitations in Plaintiff's ability to "attend and concentrate" bared "little weight" because it was inconsistent with the record. (*Id.* at 380). In support of this, the ALJ detailed the medical records from multiple sources, including Dr. Spies, as well as Plaintiff's self-reported activities, and medical treatment. (*Id.* at 380).

The Court's review of ALJ Lindsay's decision reveals that she referenced and discussed the mixed objective findings in the record extensively. Indeed, ALJ Lindsay acknowledged that Plaintiff, at times of sobriety, presented with isolating behaviors, anxiousness, depression, and intermittent abnormal thought processes, but generally reported with good insight, judgment, and

intact cognition. (*See* AR at 373–80). Contrary to Plaintiff's assertion, ALJ Lindsay significantly reviewed Plaintiff's MSEs over a six-year period, in formulating the foregoing observations. *See* AR at 375–76, 378 (citing AR at 304 (February 5, 2015, record from Sonia Chavez at Casa de Salud Family Medical Office, indicating Plaintiff was sober, "engaged in interview," "no audio, visual or tactile hallucinations," she was "calm, making eye contact, [and] normal gait and balance," reasonably "worried" about her daughter going to jail, mood congruent, and seeking counseling)); AR at 377 (citing AR at 303 (February 27, 2015, record from Sonia Chavez at Casa de Salud Family Medical Office, period of sobriety, had energy, not "as moody," reading and praying, walking and exercising, clam, made eye contact, was distracted and texting, in a hurry because a ride was waiting for her, "no audio, visual or tactile hallucinations," "mood congruent")); AR at 374, 376, 377, 380 (citing AR at 311–14 (November 18, 2015, MSE report by Dr. Spies stating Plaintiff sober since August 2015, moods stable on current medication, arrived on time, "oriented to person, time, place, and situation," "thought process was coherent and her thought was unremarkable," spelt "WORLD" backward, no hallucinations, anxious mood, able to recall a recent news event, fear of other people, and worried about being homeless)); AR at 376, 378–80 (citing AR at 365 (August 4, 2017, report by Cheri Cerghizan, CNP, observing Plaintiff's self-report of marijuana use, "grossly intact" cognition, organized and circumstantial thought process, no evidence of delusions, although, depressed/anxious mood related to social stressors, possible mood swings related to environmental stressor, and "hopeless/helpless" thoughts)); AR at 373–80 (*generally* citing AR at 659–852 (medical report from Presbyterian Healthcare Services from April 1, 2015 to September 16, 2020, reporting by various providers)); AR at 373 (citing AR at 749 (May 9, 2016, medical report from Presbyterian Healthcare Services, Plaintiff presents with depression, but behavior and judgment normal)); AR at 376, 379–80 (citing AR at 745 (November 2, 2016, medical report from Presbyterian Healthcare Services, Plaintiff reports a couple months of no methamphetamine use, "grossly intact" cognition, "cooperative[, but s]pontaneously interactive," "alert and oriented," "organized, relevant and goal directed" thought process, "no evidence of delusions, obsessions, or distortions," but thoughts and feeling of guilt and

"hopeless/helpless," overall mood depressed and anxious)); AR at 376–80 (citing AR at 741 (August 14, 2017, medical report from Presbyterian Healthcare Services, Plaintiff admitted to marijuana use, she was cooperative, but "spontaneously interactive," "grossly intact" cognition, "alert and oriented," "organized and circumstantial" thought processes, "no evidence of delusions," does present as "hopeless/helpless," depressed, anxious, and guilty)); AR at 376–77, 379 (citing AR at 739 (October 11, 2017, medical report from Presbyterian Healthcare Services, Plaintiff admitted to marijuana use, she was cooperative, but "spontaneously interactive," "grossly intact" cognition, "alert and oriented," "organized and circumstantial" thought processes, "no evidence of delusions," does present as "hopeless/helpless," depressed, and guilty)); AR at 373 (citing AR at 717 (October 28, 2019, medical report from Presbyterian Healthcare Services, Plaintiff appears anxious, speech is rapid, pressured, she is agitated, and actively hallucinating, tests positive for amphetamine and admits to use)); AR at 376, 379–80 (citing AR at 723 (October 29, 2019, medical report from Presbyterian Healthcare Services, reporting Plaintiff's motor activity normal, but rocked back and forth during the interview, mood and affect were normal, impulse control fair, thoughts organized, alert and oriented, however, probable meth induced psychosis)); AR at 373, 376, 379–80 (citing AR at 714 (November 3, 2019, medical report from Presbyterian Healthcare Services, Plaintiff was seen for conjunctivitis and reported using methamphetamine one to two weeks prior, she appeared anxious and hyperactive, but not aggressive, slowed, withdrawn, hallucinating, or combative, she presented normal cognition and memory, no depressed mood, and was attentive)); AR at 373 (citing AR at 694 (March 21, 2020, Presbyterian Healthcare Services, stating Plaintiff endorses marijuana and methamphetamine use, she is "alert, mental status is at baseline, mood is anxious, behavior normal, thought content is paranoid and delusional)); AR at 375–77, 379–80 (citing AR 680–81 (April 27, 2020, Plaintiff cooperative, but "spontaneously interactive," "grossly intact" cognition, alert and oriented, "organized and circumstantial" thought processes, "no evidence of delusions," is "hopeless/helpless," depressed, and anxious, reported methamphetamine use in October 2019); AR at 668–79 (June 4, 2020, indicating Plaintiff cooperative, but "spontaneously interactive,"

"grossly intact" cognition, alert and oriented, "organized and circumstantial" thought processes, "no evidence of delusions," but is hopeless/helpless, and then on June 30, 2020, Plaintiff self-reporting methamphetamine use on or around June 23, 2020)); AR at 376, 379–80 (citing AR at 662 (August 13, 2020, grossly intact cognition, cooperative, spontaneously interactive, organized and circumstantial thought processes, no evidence of delusions, but hopeless/helpless thoughts)); AR at 373, 375, 379–80 (citing AR at 853–81 generally), (citing AR at 858–59 (July 8, 2020,[3] discharge notes at Haven Behavioral Health Hospital: methamphetamine use approximately a week prior to discharge and, at discharge, Plaintiff was "alert," "awake," oriented, "cooperative and polite," mood and affect was "depressed and congruent," "still mildly delusional," cognitively intact, judgment and insight "somewhat impaired"); AR at 862–63 (July 1, 2020, Haven Behavioral Health Hospital admission notes: Plaintiff positive for methadone and THC, Plaintiff was "alert and awake," "cooperative," "delusional, perhaps some visual hallucinations," "anxious and congruent," cognition was impaired, judgment was fair and Plaintiff understood "that there is something wrong with her, but does not necessarily understand the condition or the need for psychiatric treatment and detox . . . of meth."); AR at 868 (July 3, 2020, Haven Behavioral Health Hospital MSE: Plaintiff "alert and awake," "cooperative and polite," "mood and affect is depressed, congruent," denied "visual hallucinations," endorsed "tactile hallucinations," "cognition intact," and "judgment and insight" impaired); AR at 870 (July 5, 2020, Haven Behavioral Health Hospital MSE update: Plaintiff "alert and awake," "cooperative and polite," "thought content is delusional," "cognition intact," and "judgment and insight . . . somewhat impaired"); AR at 872 (July 6, 2020, Haven Behavioral Health Hospital MSE update: Plaintiff MSE unchanged from July 5, 2020); AR at 875 (July 6, 2020, Haven Behavioral Health Hospital MSE update: Plaintiff is unchanged, except "thought content is still mildly delusional")); AR at 373, 376, 378 (*generally* citing Medical Report from St. Martin's Hospitality Center September 15, 2021, to October 11, 2021)); AR at 373 (citing AR at 924 (September 15, 2021, medical

---

[3] Plaintiff was admitted to Haven Behavioral Health Hospital from July 1, 2020, to July 8, 2020. *See* AR at 858. Plaintiff's discharge summary, however, was prepared on July 20, 2020. *Id.* at 860.

evaluation by Janet Dominguez, NP, finding Plaintiff cooperative, anxious, depressed, illusions, flight of ideas, and slurred and over productive speech)); AR at 373, 378 (citing AR at 968 (date unknown, MSE at St. Martin's Hospitality Center, reporting Plaintiff tense, eye contact intermittent, accelerated activity, but cooperative, anxious, and confused attitude toward examiner, irritable, and anxious mood, rapid and overproductive speech, thought process racing, circumstantial, and flight of ideas, perception "reexperiencing")); AR at 376, 379, 380 (citing AR at 958 (date unknown, MSE at St. Martin's Hospitality Center, stating no cognitive problems clinically indicated)); AR at 376, 378, 380 (citing AR at 1025 (in or around December 2021, St. Martin's Hospitality Center records, noting Plaintiff "was friendly, present, and coherent," she responded to questions asked by case worker to complete enrollment paperwork to participate in research study)); AR at 377, 378 (citing AR at 932 (date unknown, MSE at St. Martin's Hospitality Center, hallucinations visual and tactile, paranoid thought content, persecution delusions, mild "impaired ability to make reasonable decisions")), (citing AR at 936 (approximately Sept. 2021, St. Martin's Hospitality Center, Plaintiff self-reports cannabis use and "ability to function in daily activities," "minor family/friend support," mental status "neutral," engaged, "delusional thinking – somatic," "affect congruent to mood")), AR at 378 (citing AR at 988, 992, 1000, and 1012 (illegible dates in 2021, St. Martin's Hospitality Center, Psychotherapy Progress Note stating "no significant changes reported or observed to Plaintiff's "mood/affect . . . through process/orientation . . . motor activity and speech . . . behavior/functioning . . . medical condition")).

Moreover, ALJ Lindsay determined the objective medical and opinion evidence demonstrated Plaintiff's "mental conditions were successfully controlled with psychotropic medications and therapy." (AR at 377). What is more, Plaintiff "was able to keep up with the pace of questioning and maintain sufficient concentration" to understand the questions posed to her during the administrative hearing. (AR at 376). The Court, therefore, finds there is substantial evidence to support the ALJ's discount of Dr. Spies' opinion as to Plaintiff's ability to "attend and concentrate."

The ALJ was not required to specifically identify evidence that contradicted Dr. Spies'

opinion as Plaintiff so demands. *See Best-Willie v. Colvin*, 514 Fed. Appx. 728, 733 (10th Cir. 2013) (noting the ALJ's decision must be read as a whole to determine if the ALJ adequately discussed the evidence). There is no error when, as here, the Court can follow the ALJ's reasoning upon review of the decision in its entirety and determine that the ALJ applied the correct legal standards. *Keyes-Zachary*, 695 F.3d at 1160 (finding mere technical omissions in the ALJ's reasoning do not warrant reversal when the court can follow the ALJ's reasoning). Taken as a whole, the ALJ's decision provides reasons, supported by substantial evidence, for accrediting "little weight" to Dr. Spies' opinion. The Court finds no error in this regard.

Plaintiff also asserts the ALJ ignored "other abnormal findings" outside of the MSEs, but did not proffer any evidence thereto. (Doc. 21 at 20–22). Plaintiff further claims the ALJ failed to consider consistent reports of circumstantial thinking, but once again does not direct this Court to any specific evidence. (*Id.*) As best the Court can surmise, Plaintiff essentially asks the Court to reweigh the MSEs and Dr. Spies' opinion; something the Court cannot do. The Court is constrained to reviewing whether the ALJ erred as a matter of law in its treatment of Dr. Spies' opinion. It is not the proper role of this Court to substitute its judgment for that of the ALJ. "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (internal quotes omitted). It is the Court's role only to determine if the ALJ properly explained her reasoning for assigning little weight to Dr. Spies' opinion as to Plaintiff's ability to "attend and concentration." The Court finds that the ALJ properly considered Dr. Spies' opinion, assigned it the weight she felt it warranted, discounted it due to other evidence in the record, and satisfactorily explained her reasoning. Thus, there is no error.

### ii.     *Food Stamps and Public Transportation*

Next, Plaintiff argues the ALJ failed to properly articulate and substantiate how Plaintiff's assistance in completing public benefit paperwork, complying with food stamps, and navigating public transportation contradicted Dr. Spies' opinion. (Doc. 21 at 21). Plaintiff also asserts the ALJ failed to develop the record sufficiently as to these issues. (*Id.*; *see also* Doc. 28 at 7.)

As noted above, Dr. Spies concluded Plaintiff was "markedly limited in her abilities to attend and concentrate as well as interact with the public, coworkers, or supervisors." (AR at 374 (citing AR at 312–13)). Plaintiff also reported and testified that she had issues with understanding and concentrating. (AR at 380). The ALJ found, however, that Plaintiff's daily activities did not support her reported degree of limitations. (*Id.* at 376). Plaintiff testified that her daily activities included reading the Bible and riding the bus. (*Id.* at 409). The ALJ further noted Plaintiff's objective medical evidence demonstrated her ability to participate in daily activities requiring attention and concentration. (*See id.* at 375, 380 (citing AR at 315 (November 18, 2015, MSE stating Plaintiff "enjoys cooking and gardening"); AR 323 (August 31, 2015, psychoeducational report by Dr. Arcuri stating Plaintiff receives "SNAP benefits," "relies on public transportation," "able to manage all ADLs without assistance); AR 364 (August 4, 2017, Presbyterian Healthcare Services record noting Plaintiff "enrolled in DVR . . . says she tries to stay busy and does adult coloring" . . . "receives food stamps"); AR at 661 (August 13, 2020, Kaseman Behavior Medicine progress note stating Plaintiff on "food stamps"); AR at 1025 (2021 St. Martin's Hospitality Center progress note, stating Plaintiff asked questions, responded to questions directed to her to complete Opening Doors enrollment paperwork); AR at 1079 (November 23, 2020, Presbyterian Behavioral Health progress note wherein Plaintiff admitted to obtaining food stamps and in was contact with NM Solutions for CSW))). Notably, an exhaustive review of the record details further activities that required Plaintiff's attention and concentration. *See* AR at 376, 378 (citing AR at 979 (December 20, 2021, St. Martin's Hospitality Center records, Plaintiff states she calls her granddaughter, reads her Bible, and goes for a walk as part of her coping mechanisms); AR at 378 (citing AR at 947 (St. Martin's Hospitality Center Adult Comprehensive Assessment, date unknown, Plaintiff states she likes to garden and go outside and go to Church twice a week)).

Moreover, Plaintiff has not proffered any authority that the ALJ's failure to elicit further testimony at the administrative hearing about Plaintiff's daily activities is harmful error. "[T]he burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). "Nevertheless, because a social security disability hearing is a

nonadversarial proceeding, the ALJ is 'responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting *Hawkins*, 113 F.3d at 1164). However, an ALJ's duty to develop the record is not without limits: an ALJ is permitted to draw reasonable inferences about the circumstances of Plaintiff's daily activities. *Harlan v. Apfel*, 2000 U.S. App. LEXIS 33459, *4 (10th Cir. 2000). For instance, an ALJ may reasonably deduce the level of concentration and understanding necessary to navigate public transportation, attend Church, and prepare a meal. (*See id.*) Also, prior to closing the record, ALJ Lindsay afforded Plaintiff's counsel an opportunity to ensure a complete record. (AR at 416–17). Plaintiff's counsel made a short closing statement, but neither he nor Plaintiff added further testimony as to Plaintiff's daily activities. (*Id.*) The Court will not ordinarily remand for failure to develop when a claimant's attorney indicates that the record is complete. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008); *Branum v. Barnhart*, 385 F.3d 1268, 1271–72 (10th Cir. 2004).

### iii.   *The ALJ's Assessment of Dr. Acuri's Opinions*

Plaintiff first argues that the ALJ failed to recognize that Dr. Spies' evaluation of Plaintiff occurred during a period of sobriety and, for that reason, should have accorded Dr. Spies' opinion the same weight as Dr. Acuri's opinion. (Doc. 21 at 21). This is inaccurate. The ALJ specifically noted that Plaintiff "was in the early stages of sobriety when evaluated by Dr. Spies" and, as a result, did not consider Plaintiff's "substance use when providing an opinion as to functional limitations." (AR at 374). Further, as the Court previously discussed, the ALJ's reasons for giving "little weight" to Dr. Spies' opinion as to Plaintiff's attention and concentration is supported by substantial evidence. The Court thus finds no harmful error with respect to Plaintiff's first contention.

Next, Plaintiff asserts the ALJ did not consider the limitations of Dr. Acuri's opinions. (Doc. 21 at 21). Specifically, Dr. Acuri wrote in his opinion, "This evaluation is appropriate for DVR use only as the focus is on returning to work and related needs rather than on any determination of disability." (*Id.* (citing AR at 325)). Plaintiff does not proffer any evidence that

14

the ALJ afforded Dr. Acuri's opinions greater weight because of this statement. Dr. Acuri also does not have authority to conclude whether Plaintiff can return to work. To that end, the ALJ noted in her decision that such a finding was reserved for the Commissioner. (AR at 380). For these reasons, the Court again finds no harmful error as to this assertion.

Third, Plaintiff claims the ALJ mistakenly categorized Dr. Acuri's findings as "unremarkable" and his opinion included limitations and accommodations the ALJ failed to present to the VE at step five. (Doc. 21 at 21–22). The Commissioner counters the ALJ assessed Dr. Acuri's limitations and incorporated them accordingly. (Doc. 27 at 17).

In considering medical evidence of record, the ALJ gave "great weight" to Dr. Acuri, a finding Plaintiff does not take issue with. (Doc. 21 at 21–22). In August 2015, Dr. Acuri conducted an integrative psychoeducational evaluation and conducted several diagnostic tests. (AR at 374 (citing AR at 323–47)). Dr. Acuri's report indicates Plaintiff scored 29/30 points on the Mini Mental Status Examination, which he opined was consistent with "normal mental status and reflects cognitive abilities." (AR at 380 (citing AR at 326). Plaintiff's performance on the Trail Making Parts A and B "suggested mental slowness consistent with cognitive and/or mood problems, which affected processing speed and executive function tasks such as planning, organization, and decision-making." (*Id.*) Lastly, Plaintiff's scores on the Reynolds Intellectual Assessment Scales ("RIAS") placed her memory within the "Low Average range of intellectual functioning." (AR at 375, 380 (citing AR at 327–28). Plaintiff was also cooperative during the assessments, "alert and oriented to person, place, and situation," she also "could elucidate the general steps required to reach goals." (AR at 378 (citing AR at 325–26). The ALJ accurately summarized Dr. Acuri's report. (AR at 374–76, 380).

Plaintiff also contends Dr. Acuri recommended "accommodations" for Plaintiff, including, "working memory aides such as repeating information as required; breaking down tasks and instructions into smaller components to minimize memory load," to which the ALJ did not convey to the VE. (Doc. 21 at 22). Plaintiff mischaracterizes this evidence. Dr. Acuri recommended approximately 12 "considerations" to assist Plaintiff during employment. (AR at 328). Dr. Acuri's

15

report does not demonstrate that Plaintiff would be unable to maintain employment without the "considerations." (*Id.*) Though the report undoubtedly indicates Plaintiff suffers from mental impairments, it also indicates that Plaintiff has "academic and cognitive scores" that suggest she could do well in a variety of work settings. (*Id.* at 330). Moreover, taking the entire record into consideration, ALJ Lindsay determined Plaintiff had a moderate limitation in understanding, remembering, or applying information (whether her substance abused continued or not). (AR at 375). She then posed to the VE a hypothetical of an individual who "would be limited to understanding, remembering, and carrying out only simple instructions" and requested positions with reasoning levels 1 and 2. (AR at 410–13). The subsequent RFC states Plaintiff "is limited to understanding, remembering, and carrying out only simple instructions . . . and maintain attention and concentration to perform and persist at only simple tasks . . . ." (*Id.* at 377). This adequately accounts for the findings of moderate limitations. *See, e.g., Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) ("[A]n administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity."); *cf. Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (finding that the ALJ accounted for plaintiff's moderate concentration, persistence, and pace problems in the RFC assessment limiting him to unskilled work). Hence, the Court finds no harmful error.

Finally, Plaintiff claims the ALJ cherry picked evidence because she gave less weight to Dr. Spies' opinion on the basis it was "stale," but failed to apply the same reasoning to Dr. Acuri's opinion. (Doc. 21 at 21–22). Although Plaintiff is accurate that Dr. Acuri's report is older than Dr. Spies' report, substantial evidence supports the ALJ's finding of giving Dr. Spies' opinion less weight for the reasons previously articulated. Accordingly, there is no harmful error as to Plaintiff's final contention.

### B.  Development of the Record

In the Motion, Plaintiff argues that the ALJ erred by failing to consider the objective medical evidence from Haven Rehabilitation pertaining to Plaintiff's sobriety. (Doc. 21 at 22–23). The Motion makes no reference to any other medical evidence being in dispute, notwithstanding

Plaintiff's contentions as to Dr. Spies' opinion which this Court previously addressed. (*Id.*) In her reply brief, Plaintiff advances several new arguments. In short, she asserts that the ALJ did not develop the record as to her conditions and limitations when she abstained from methamphetamine. (Doc. 28 at 1–5). The Court disagrees.

If an ALJ finds that a plaintiff is disabled, and there is medical evidence of substance use, the ALJ must determine whether the substance use is a contributing factor material to the determination of disability—that is, whether the claimant would still be disabled if she stopped using drugs. 20 C.F.R. § 416.935.

In the case at bar, the ALJ determined Plaintiff had the following severe impairments: bipolar affective disorder, anxiety disorder, delusional disorder, and substance abuse disorder. (AR at 373–75). The ALJ further found that when Plaintiff continued her substance use the severe impairments would persist. (*Id.*) Several of the severe impairments, including bipolar affective disorder, anxiety disorder, and delusional disorder, would remain when Plaintiff abstained. (*Id.* at 375). Nevertheless, one or a combination of those impairments were not sufficient to meet or medically equal the listings. (*Id.* at 375–77). As discussed previously, the ALJ meticulously reviewed the subjective and objective evidence in the record. The ALJ assessed Plaintiff's medical records, which covered periods of substance use and sobriety over a six-year time span. (*See supra* Section IV.A.i). In addition to Dr. Spies and Dr. Acuri, ALJ Lindsay also reviewed opinion evidence of Michael A. Lace, PsyD, an impartial medical expert; (2) DDS state-agency psychological consultants; and (3) Christine Paschke, Plaintiff's mother. (*Id.* at 374–80). In her decision, ALJ Lindsay discussed each opinion, including tests, exams, interrogatories, and general statements made by each individual and reasoned what weight, if any, an opinion was afforded. (*Id.*) The record, taken as a whole, demonstrates substantial evidence in support of the ALJ's determination. The Plaintiff has not shown any harmful error with the respect to the ALJ's development of the record. The Court will not reverse on this ground.

### C. Consideration of Effects of Alopecia

In her final argument, Plaintiff contends that the ALJ erred by failing to consider Plaintiff's

limitations from alopecia in steps two through five. (Doc. 21 at 23). The Commissioner describes Plaintiff's argument as "underdeveloped" and should be deemed waived. (Doc. 27 at 18). The Commissioner, citing *Keyes-Zachary*, 695 F.3d at 1161, argues that the Court should not find any failure on the part of the ALJ to discuss alopecia based on Plaintiff's skeletal argument. (*Id.* (*citing Keyes-Zachary*, 695 F.3d at 1161; *Atwood v. Saul*, No. 19-350, 2020 WL 39104, at *3 (D.N.M. Jan. 3, 2020) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)). Here, Plaintiff's general assertion that she was diagnosed with alopecia and, thereby, has additional functional limitations is not sufficient to show harmful error. *Atwood*, 2020 WL 39104, at *3; *see also Madrid*, 447 F.3d at 792.

Assuming, *arguendo*, Plaintiff's argument is not waived, she has failed to demonstrate any error. Critically, Plaintiff's Motion makes no effort to demonstrate how alopecia would have supported additional functional limitations, let alone that Plaintiff was diagnosed with alopecia. (Doc. 21 at 23). In her reply, Plaintiff directs the Court to a March 2, 2021, Presbyterian Healthcare Services visit summary. (*See* Doc. 28 at 8 (citing AR 1087–93). Under "Chief Complaint," the note states, in relevant part, "[p]atient has a long history of rashes, alopecia, and nail changes of unclear etiology. Patient continues to be certain that her symptoms are caused by a parasite. She feels that there are "worms inside of me" that are causing these problems. . . . She continues to have patchy hair loss." (AR at 1087). Under "Diagnosis" only bipolar 1 disorder and Raynaud's disease are noted. (*Id.* at 1088). The "Review of Systems" section states "Skin: positive for rash. + hair loss" (*Id.* at 1089). The "Skin" portion of the "Physical Exam" states, "Patchy alopecia." (*Id.* at 1090). Then, under "Assessment and Plan" the note states, "However, patient does have patchy alopecia." (*Id.* at 1091). The document does not cite any functional limitations for Plaintiff's alopecia. (*See id.*)

Plaintiff's reliance upon the mere diagnosis of alopecia is misplaced because it is the resultant functional limitations arising from such a condition, if any, that must be used by the Commissioner to formulate Plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a) ("Your residual

functional capacity is the most you can do despite your limitations."); § 416.945(a) (same). "Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016) (*citing Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988) (diagnosis of major depression does not automatically establish disability); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (no medical evidence corroborated claimant's testimony that she was unable to work).

Still, Plaintiff contends her own testimony provides the requisite functional limitations of a listed impairment. (Doc. 28 at 9 (citing AR at 404)). At the administrative hearing, Plaintiff testified that she has alopecia, has not had hair for six years, and has "some kind of problems with [her] skin." (AR at 403–04). Plaintiff also testified she believed her issues were from a purported parasitic infection or skin disorder. (*Id.* at 404–05). Plaintiff then testified she felt "unclean and dirty," she covered her head, and secluded herself in her car. (*Id.*) Plaintiff does not direct the Court to any authority that these complaints satisfy the criteria of a listed impairment. *See Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015) (where a treating physician diagnosed a condition but did not opine on the functional limitations imposed by the condition and claimant does not allege the condition is of listing-level severity, "the diagnos[i]s by [it]sel[f is] not significantly probative evidence the ALJ had to reject in order to find [the claimant] was not disabled, and therefore the ALJ did not need to discuss [it]"). The Court can only surmise that Plaintiff seeks the Court to substitute its judgment for that of the Commissioner and assess what listed impairment, if any, Plaintiff's testimony satisfies. This is a step the Court will not take.

Furthermore, the record shows that the ALJ considered Plaintiff's "skin disorder" and purported parasitic infection in formulating her decision. (*See* AR at 373). The ALJ even noted that Plaintiff was evaluated by a dermatologist and underwent other diagnostics for her skin concerns. (*Id.*). She also discussed how Plaintiff's sobriety affected her skin disease. (*Id.* at 373–80). The Court therefore concludes Plaintiff has not demonstrated how alopecia, or a skin disease impairment, warranted additional functional limitations. The ALJ committed no legal error and

substantial evidence supports the RFC. The Court will deny Plaintiff's Motion on this final ground.

## V. CONCLUSION

Having conducted a thorough review of the administrative record, the Court concludes that the ALJ applied the correct legal standards and that her factual findings were supported by substantial evidence. Plaintiff's arguments to the contrary are not well-taken. Accordingly, Plaintiff's Opposed Motion to Reverse and Remand (Doc. 21) is **DENIED.**

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**